IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

STEVEN HOOKS PLAINTIFF

v. Civil No. 09-2144

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## I. Factual and Procedural Background

Plaintiff, Steven Hooks, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), pursuant to §§ 216(i) and 223 of Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423(d), and § 1602 of Title XVI, 42 U.S.C. § 1381a, respectively (collectively, "the Act").

At the time of the alleged onset date, Plaintiff was 42 years old with the equivalent of a high school education. Tr. 35, 169, 197. He performed past relevant work as a carpet installer, processor in a poultry plant, construction laborer, and equipment operator. Tr. 21. Plaintiff protectively filed his DIB application on September 12, 2006, and his SSI application on November 27, 2006, alleging a disability onset date of December 31, 2005, due to chronic obstructive pulmonary disease ("COPD"), depression, anxiety, hypertension, carpal tunnel syndrome, obesity, emphysema, neck pain, back pain, knee swelling, arthritis, tendonitis, and blindness in his left eye. Tr. 14, 60-61, 118-28, 162.

Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 77-83, 85-88. At Plaintiff's request, an administrative hearing was held on October 23, 2008. Tr. 29-59. Plaintiff was present at this hearing and represented by his attorney. The Administrative Law Judge ("ALJ") rendered an unfavorable decision on February 3, 2009, finding Plaintiff was not disabled within the meaning of the Act. Tr. 11-23. Subsequently, the Appeals Council denied Plaintiff's Request for Review on October 9, 2009, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Plaintiff now seeks judicial review of that decision.

## II. Motion to Introduce New Evidence

As a preliminary matter, we address Plaintiff's Motion to Introduce New Evidence. ECF No. 5. A case may be remanded for consideration of new evidence if the evidence is material and there is good cause for the failure to incorporate such evidence into the record. 42 U.S.C. § 405(g). To be material, evidence must be "non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied." *Rehder v. Apfel*, 205 F.3d 1056, 1061 (8th Cir. 2000) (quoting *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997)). Furthermore, it must be reasonably likely that the new evidence, if available to the ALJ, would have resulted in an award of benefits. *Jones*, 122 F.3d at 1154.

Plaintiff submitted the following additional evidence: (1) a sleep study performed on November 11, 2009; (2) knee x-rays from Scott County Rural Health Clinic dated October 27, 2009; (3) an MRI of Plaintiff's cervical spine dated November 4, 2009; and (4) medical records from Scott County Rural Health Clinic dated March 10, 2009. ECF No. 5, 7-18. For reasons stated below, we DENY Plaintiff's Motion to Introduce New Evidence.

First, Plaintiff's sleep study is evidence of a new condition not complained of during the relevant time period. *Jones*, 122 F.3d at 1154 (new evidence must not concern later-acquired disabilities). Additionally, the MRI of Plaintiff's cervical spine and the x-rays of his knee were obtained over eight months after the ALJ's decision and are outside the relevant time period. *Id.* ("An implicit requirement is that the new evidence pertain to the time period for which benefits are sought, and that it not concern . . . subsequent deterioration of a previously non-disabling condition."). Moreover, these records show only mild degenerative changes, and we do not find a reasonable likelihood that a remand of this case would result in an award of benefits. *See Rehder*, 205 F.3d at 1061 (8th Cir. 2000).

Plaintiff also submits medical records dated March 10, 2009, which were already incorporated into the record and considered by the Appeals Council. Tr. 4, 234-35. Under the regulations, "if a claimant files additional medical evidence with a request for review prior to the date of the [Commissioner's] final decision, the Appeals Council MUST consider the additional evidence if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Once it is clear that the Appeals Council has considered newly submitted evidence, we do not evaluate the Appeals Council's decision to deny review. Instead, our role is limited to deciding whether the ALJ's determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made. *See, e.g., Nelson,* 966 F.2d at 366, and *Browning v. Sullivan,* 958 F.2d 817, 822 (8th Cir.1992). Of necessity, that means we must speculate to some extent on how the ALJ would have weighed the newly submitted reports if they had been available for the original hearing. We consider this to be a peculiar task for a reviewing court. *See Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994).

For reasons more thoroughly explained in Section V of this opinion, we find that the March 10, 2009 report from April Revis would not have impacted the ALJ's decision in this case. Thus, Plaintiff's motion is DENIED.

## III. Medical History

Plaintiff reportedly suffers from hypertension, carpal tunnel syndrome, morbid obesity, emphysema, arthritis, edema of the legs, tendonitis, back and neck pain, and blindness of the left eye. Tr. 245. In August 2006, he presented to Scott County Rural Health Clinic with complaints of neck pain and headaches. Tr. 319. Rizwana Khan, M.D., noted bilateral paraspinal tenderness, mild trapezius tenderness, and occipital tenderness, and Plaintiff's neck movements were restricted bilaterally. Tr. 319. Dr. Khan diagnosed Plaintiff with muscle strain and prescribed Flexeril and Naproxen. Tr. 320. He was also given medication for high blood pressure. Tr. 320.

In September 2006, Plaintiff saw Dr. Khan with complaints of neck pain, grip problems, and arm numbness. Tr. 317. A Phalen's maneuver yielded positive results. Tr. 317. Dr. Khan noted some cervical muscle tenderness on the right side and straining with movement. Tr. 317. X-rays of Plaintiff's cervical spine revealed minimal straightening of the cervical curve, but vertebral body heights, disc spaces, and alignment were well maintained with no definite compromise of the neural canal. Tr 326.

On December 18, 2006, Plaintiff was admitted to Mercy Hospital of Scott County with complaints of right leg cellulitis. Tr 322. Upon examination, Nathan Bennett, D.O., noted some bilateral ankle edema. Tr. 323. Dr. Bennett ordered a right lower extremity venous doppler ultrasound, which yielded negative results. Tr. 240. Plaintiff was treated for cellulitis and discharged with antibiotics and prescriptions for Lasix and potassium. Tr. 321. At a follow-up

appointment, Plaintiff's cellulitis was resolving. Tr. 343. Compression stockings were ordered for his peripheral edema. Tr. 343.

On February 12, 2007, Plaintiff was referred to Rhonda Tannehill, Ph.D., for a mental status evaluation. Tr. 245-58. Plaintiff was oriented to time, person, and place. Tr. 248. Thought processes were logical and coherent. Tr. 247. Mood and affect were within normal limits. Tr. 247. At the time of the evaluation, Plaintiff was taking Albuterol, Lorcet, potassium, Lasix, Norflex, Metoprolol, Fluoxetine, and Trazodone. Tr. 245. He reportedly smoked three-fourths a pack of cigarettes per day. Tr. 247.

In school, Plaintiff received special education services and was held back in first and seventh grades. Tr. 246. He dropped out during the eighth grade, but later acquired his GED. Tr. 246. Past employment included work in construction, sawmills, furniture manufacturing, and carpet laying. Tr. 246. Plaintiff reportedly quit most of these jobs, but was fired from some for being late, missing days, and anger problems. Tr. 246.

Plaintiff was arrested three times for driving while intoxicated and had difficulties with alcohol abuse in the past. Tr. 246. He had no history of mental health treatment, but was reportedly hospitalized after a suicide attempt at the age of twenty one. Tr. 247. He also participated in court-ordered alcohol counseling. Tr. 247.

Dr. Tannehill noted that Plaintiff's immediate memory was poor, as was his self-concept. Tr. 248. He reported depression, panic attacks, and suicidal ideation, but no plan or intent. Tr. 248. Plaintiff's pace was slow, but he had no problems with concentration or persistence. Tr. 249. His cognitive abilities appeared to be average, and Dr. Tannehill estimated his IQ at 80 or above. Tr. 249. She diagnosed Plaintiff with alcohol dependence in early remission and adjustment disorder

with mixed anxiety and depressed mood. Tr. 249. She noted adaptive functioning deficits in community living, work, socialization and leisure, and estimated Plaintiff's Global Assessment of Functioning ("GAF") score at 45-55. Tr. 250. Dr. Tannehill opined that Plaintiff's prognosis was fair with continued treatment. Tr. 249.

Plaintiff was sent for a consultative physical examination with Van Hoang, M.D., on February 28, 2007. Tr. 260-66. Upon examination, Plaintiff exhibited full range of motion in his cervical and lumbar spine, but had an abnormal straight-leg raise. Tr. 263. He had full range of motion in his extremities, including his shoulders, elbows, wrists, hands, hips, knees, and ankles. Tr. 263. He had no muscle weakness or atrophy, and gait and coordination were normal. Tr. 264. Plaintiff demonstrated normal grip, and was able to hold a pen and write, touch his fingertips to his palm, oppose his thumb to his fingers, pick up a coin, stand and walk without assistance, walk on his heels and toes, and squat and rise from a squatting position. Tr. 264. His weight was 324 pounds with a body mass index of 47. Tr. 268. Dr. Hoang found no circulatory problems and no evidence of edema. Tr. 265. He assessed Plaintiff with depression and anxiety (by history), emphysema or chronic bronchitis (by history), chronic low back pain, multiple joint arthralgia/polyarthropathy, left eye traumatic blindness, bilateral carpal tunnel syndrome, morbid obesity, and hypertension. Tr. 266. He determined that Plaintiff was "severely limited on physical capacity in all aspects." Tr. 266.

In March 2007, Plaintiff went to Good Samaritan Clinic for a follow-up appointment regarding hypertension, COPD, anxiety, and obesity. Tr. 341. He was reportedly still smoking at this time. Tr. 341.

In a Psychiatric Review Technique dated April 3, 2007, Dan Donahue, M.D., considered Listings 12.04 (affective disorders) and 12.09 (substance abuse), but determined that Plaintiff did

not meet either listing. Tr. 269-82. Dr. Donahue determined that Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration. Tr. 279. In an accompanying Mental RFC Assessment, Dr. Donahue found that Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, complete a normal workday and work week without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work place, and set realistic goals or make plans independently of others. Tr. 285. He found that Plaintiff was not significantly limited in all other categories. Tr. 285.

Plaintiff went to the Fort Smith Lung Center on May 11, 2007, where he underwent a spirometry test to evaluate his lung capacity. Tr. 288-95. Plaintiff's results indicated moderate obstructive pulmonary impairment. Tr. 288-95. Bronchodilator therapy was administered, and Plaintiff was given a prescription for Albuterol. Tr. 293-94.

In a Physical RFC Assessment dated May 22, 2007, Robert Redd, M.D., found that Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand, walk, or sit for a total of six hours in an eight-hour workday, and push/pull an unlimited amount, except as shown for lift/carry. Tr. 296-303. Dr. Redd found no postural, manipulative, visual, or communicative limitations, but determined that Plaintiff must avoid concentrated exposure to fumes, odors, dusts,

gases, and areas with poor ventilation. Tr. 298-300.

In April 2008, Plaintiff presented to Scott County Rural Medical Clinic for a follow-up regarding his hypertension, depression/anxiety, neck pain, and arm numbness. Tr. 327-28. At the time, Plaintiff was taking Lasix for water retention, potassium supplements, Prozac and Trazodone for depression and anxiety, Metoprolol for high blood pressure, Lorcet Plus for pain, and Robaxin, a muscle relaxant. Tr. 327. He reported that his depression/anxiety treatment was going well. Tr. 327. Upon examination, Plaintiff had a positive Phalen's sign, indicating possible carpal tunnel syndrome. Tr. 327. X-rays of Plaintiff's cervical spine revealed mild degenerative changes at C5/6, but good alignment with no fractures or subluxations. Tr. 357. Chest x-rays revealed a possible area of infiltrate in the medial right lung base, for which therapy and follow-up were suggested. Tr. 357. Dr. Bennett gave Plaintiff cock-up splints for his wrists and a refill of Lorcet. Tr. 327. At a follow-up appointment in September 2008, Plaintiff reported that he was "doing well." Tr. 354.

On March 10, 2009, Plaintiff saw April Revis, APN, for a follow-up appointment concerning his hypertension, peripheral edema, COPD, anxiety, depression, and pain.[1] Tr. 234-35. Plaintiff denied chest pain, shortness of breath, headaches and dizziness, but reported increased anxiety, bilateral hand pain and numbness, and neck, back, and foot pain. Tr. 234. His edema was somewhat improved with medication, but he still experienced numbness, burning, and tingling in his feet after standing for long periods of time. Tr. 234. Plaintiff was prescribed Lorcet Plus for pain and given a refill of Lasix and potassium. Tr. 235. In learning that Plaintiff was denied disability, Revis stated, "I was actually pretty shocked that he would be denied, of all people, due to his limitations and disabilities." Tr. 234.

[1] This evidence was submitted to and considered by the Appeals Council. Tr. 4.

## IV. Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner

to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## V. Discussion

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 31, 2005, the alleged onset date. Tr. 16. At step two, he found that Plaintiff suffers from COPD, obesity, blindness in one eye, and anxiety, which are severe impairments under the Act. Tr. 16. At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. Tr. 17. At step four, he found that Plaintiff retained the RFC to perform unskilled, light work in that he could frequently lift/carry ten pounds, occasionally lift/carry twenty pounds, and sit, walk, and stand for six hours out of an eight-hour workday, but must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and extreme heat, and cannot drive. Tr. 18. With these limitations, the ALJ found that Plaintiff could no longer perform any of his past relevant work. Tr. 21. However, he determined that there were jobs existing in significant numbers in the national economy that the claimant could perform.[2] Tr. 22.

Plaintiff contends that the ALJ erred in making his RFC assessment. Pl.'s Br. 1-4, ECF No. 4. We disagree.

At the fourth step of the evaluation, a disability claimant has the burden of establishing his

---

[2] After eliciting testimony from a vocational expert, the ALJ determined that Plaintiff could perform representative occupations such as cashier, of which there are 960,000 jobs nationally and 3,100 jobs locally, mail clerk, of which there are 79,000 jobs nationally and 500 jobs locally, and hand packager, of which there are 203,000 jobs nationally and 2,100 jobs locally. Tr. 22.

RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

Plaintiff argues that the ALJ failed to adequately consider his reported back impairment, carpal tunnel syndrome, edema and hypertension. Pl.'s Br. 2-3. The ALJ considered these impairments, but determined they had only a minimal effect on Plaintiff's ability to do basic work activities. Tr. 16-20. Substantial evidence supports this assessment. First, x-rays of Plaintiff's cervical spine revealed only mild degenerative changes at C5/6, but good alignment with no fractures or subluxations. Tr. 357. Upon examination by Dr. Hoang, Plaintiff exhibited full range of motion in his cervical and lumbar spine. Tr. 263. Furthermore, Plaintiff was never formally diagnosed with carpal tunnel syndrome. Upon physical examination, he had a positive Phalen's sign, indicating *possible* carpal tunnel syndrome. Tr. 327. However, his treating physician never recommended electromyogram ("EMG") or nerve conduction studies to confirm this diagnosis, nor was surgery discussed. Furthermore, Dr. Hoang noted Plaintiff had full range of motion in his extremities, including his shoulders, elbows, wrists, hands, hips, knees, and ankles. Tr. 263. He demonstrated normal grip and was able to hold a pen and write, touch his fingertips to his palm, oppose his thumb

to his fingers, and pick up a coin. Tr. 264. Additionally, Dr. Hoang found no circulatory problems or evidence of edema. Tr. 265. A venous doppler ultrasound of Plaintiff's right lower leg yielded negative results, and progress notes from April Revis indicate that Plaintiff's edema was somewhat improved with medication. Tr. 230, 234. *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (an impairment which can be controlled by treatment or medication is not considered disabling). Plaintiff's hypertension also improved with medication. Tr. 327; *Id*. For these reasons, we agree with the ALJ that Plaintiff's back impairment, carpal tunnel syndrome, edema and hypertension are not severe impairments and do not impose any further limitations than indicated by the ALJ in his RFC assessment.

Additionally, Plaintiff argues that the opinion of April Revis, APN, is significant in this case. We disagree. Revis saw Plaintiff for management of his hypertension, peripheral edema, COPD, anxiety, depression, and pain. On March 10, 2009, Revis stated, "I was actually pretty shocked that he would be denied [disability], of all people, due to his limitations and disabilities." Tr. 234. Plaintiff's reliance on this statement is misplaced. First, a medical source opinion that a claimant is disabled is not controlling, as it is the Commissioner's sole responsibility to make such a determination. *See* 20 C.F.R. § 404.1527(e); *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). Revis' statement was broad and conclusory, and she did not adequately explain the basis for her opinion. Moreover, Revis' opinion is considered "other medical evidence," and is not entitled to controlling weight. 20 C.F.R. 404.1513(d); *Ellis*, 392 F.3d at 994. For these reasons, we find that her opinion would not have impacted the ALJ's RFC determination.

Plaintiff also takes issue with the ALJ's treatment of the opinions of Dr. Hoang and Dr. Tannehill. Pl.'s Br. 2-3. At his evaluation with Dr. Hoang, Plaintiff exhibited full range of motion

in his cervical and lumbar spine and all his extremities. Tr. 263. He demonstrated normal grip, was able to hold a pen and write, touch his fingertips to his palm, oppose his thumb to his fingers, pick up a coin, stand and walk without assistance, walk on his heels and toes, and squat and rise from a squatting position. Tr. 264. Dr. Hoang found no circulatory problems and no evidence of edema. Tr. 265. Despite these completely unremarkable findings, Dr. Hoang noted that Plaintiff was "severely limited on physical capacity in all aspects." Tr. 266. This statement is inconsistent with Dr. Hoang's own evaluation and with the medical evidence as a whole. *See Bradley v. Astrue,* 528 F.3d 1113, 1116 (8th Cir. 2008) (physicians' opinions were conclusory and inconsistent with their own examinations as well as the medical evidence in the record). The ALJ considered Dr. Hoang's findings and determined that Plaintiff was capable of performing light work. Tr. 18-19. Substantial evidence supports this determination.

Substantial evidence also supports the ALJ's treatment of Dr. Tannehill's opinion. Plaintiff has no history of mental health treatment. *See Kirby v. Astrue*, 500 F.3d 705, 708-09 (8th Cir. 2007) (claimant never sought formal treatment by a psychiatrist, psychologist, or other mental health care professional). He reportedly takes Prozac and Trazodone for depression and anxiety, which has alleviated some of his symptoms. Tr. 245, 327; *See Estes*, 275 F.3d at 725 (8th Cir. 2002) (an impairment which can be controlled by treatment or medication is not considered disabling). Dr. Tannehill evaluated Plaintiff on February 12, 2007. Tr. 245-50. Thought processes were logical and coherent. Tr. 247. Plaintiff's pace was slow, but he had no problems with concentration or persistence. Tr. 249. Dr. Tannehill estimated his IQ at 80 or above. Tr. 249. She diagnosed Plaintiff with alcohol dependence in early remission and adjustment disorder with mixed anxiety and depressed mood. Tr. 249. She noted adaptive functioning deficits in community living, work,

socialization and leisure, and estimated Plaintiff's GAF score at 45-55.[3] Tr. 250. Dr. Tannehill concluded that Plaintiff's prognosis was fair with continued treatment and enrollment in a 12-step program. Tr. 249. The ALJ considered Dr. Tannehill's opinion and found that Plaintiff retained the mental RFC to perform light work as defined above. Tr. 18-21. Specifically, the ALJ noted that despite Plaintiff's reportedly disabling depression, he demonstrated no problems with concentration or persistence. Tr. 21.

We find that substantial evidence supports the remainder of the ALJ's findings. Significantly, no *physician* in this case opined that Plaintiff was unable to work. *See Raney v. Barnhart*, 396 F.3d 1007, 1010-11 (8th Cir. 2005) (no physician concluded that claimant was unable to work). Plaintiff failed to demonstrate that he is unable to perform substantial gainful activity. *See Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) ("[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant"). Accordingly, substantial evidence supports the ALJ's RFC assessment.

**VI. Conclusion**

Accordingly, having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's decision, and recommends that the decision be affirmed, and Plaintiff's case be dismissed with prejudice. **The parties have fourteen days from receipt of our Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1), *amended by* Pub. L. 111-16, §§ 6(1), 7, 123 Stat. 1607, 1608-09 (2009). The failure to file timely**

---

[3] A GAF score of 41 to 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 34 (4th ed., 2000). A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id.*

**objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 22nd day of December 2010.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE